# EARNSHAW *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 4.   Argued October 17, 1892. — Decided November 7, 1892.

A reappraisement of imported merchandise under the provisions of Rev. Stat. § 2930, when properly conducted, is binding.

When the facts are undisputed in an action to recover back money paid to a collector of customs on such reappraisement, the reasonableness of the notice to the importer of the time and place appointed for the reappraisement is a question of law for the court.

Appraisers appointed under the provisions of Rev. Stat. § 2930 to reappraise imported goods constitute a quasi-judicial tribunal, whose action within its discretion, when that discretion is not abused, is final.

An importer appealed from an appraisement of goods imported into New York, in 1882. A day in June, 1883, was fixed for hearing the appeal. The Government, not being then ready, asked for an adjournment, which was granted without fixing a day, and the importer was informed that he would be notified when the case would be heard. March 19, 1884, notice was sent by letter to him at his residence in Philadelphia, that the appraisement would take place in New York, on the following day. His clerk replied by letter that the importer was absent, in Cuba, not to return before the beginning of May then next, and asked a postponement till that time. The appraisers replied by telegram that the case was ad-

journed until March 25. On the latter day the case was taken up and disposed of, in the absence of the importer or of any person representing him. *Held,*

(1) That the notices of the meetings in March were sufficient;

(2) That, in view of the neglect of the importer to make any provision for the case being taken up in his absence, and of his clerk to appear and ask for a further postponement of the hearing, the court could not say that the appraisers acted unreasonably in proceeding *ex parte,* and in imposing the additional duties without awaiting his return.

THIS cause was first argued on the 3d and 4th of November, 1890. On the 10th of that month it was ordered to be reargued. The reargument took place October 17, 1892. The case then made was stated by the court as follows:

This was an action by the United States against Earnshaw in the District Court for duties upon eleven consignments of iron ore imported by him into the port of New York in 1882. At the entry of the different consignments their values were declared, and to each of these values the appraiser made an addition.

From this appraisement Earnshaw appealed and demanded a reappraisement, and a day was fixed for the hearing in June, 1883. Earnshaw, as well as the general appraiser and the merchant appraiser, attended upon that day, and the government asked for a postponement. The proceeding was adjourned, but the day was not named, and Earnshaw was told that he would be notified.

Upon March 19, 1884, nine months after the adjournment, the defendant, who lived in Philadelphia, was notified by letter from the general appraiser that the appraisement would take place at his office in New York at noon on March 20. At that time, however, defendant was in Cuba, and his brother, who was also his clerk, wrote the general appraiser in his name that he was out of the country, and would not be back before the beginning of May, and asked a postponement of the hearing until that time. The appraiser telegraphed in reply: "Your cases adjourned to Tuesday, March 25th, 12 M." On March 31st, in the absence of Earnshaw, and with no one acting for him, the reappraisement was made, and for the

difference between the amount he had paid and the amount thus ascertained this action was brought.

Upon the trial the defendant, having read the statute authorizing the demand for a reappraisement, read the following regulation of the Treasury Department, to show that he was entitled to notice to be present at the reappraisement that he might tender evidence:

"Art. 466. On the receipt of this report the collector will select one discreet and experienced merchant, a citizen of the United States, familiar with the character and value of the goods in question, to be associated with an appraiser at large, if the attendance of such officer be practicable, to examine and appraise the same according to law. Rev. Stat. 2930. . . . The appraiser at large will be notified of the appeal, of the time fixed for reappraisement, and of the name of the merchant appraiser. The importer will be notified of the time and place, but not of the name of the merchant selected to assist in the appraisement. . . . The importer or his agent will be allowed to be present, and to offer such explanations and statements as may be pertinent to the case."

The defendant relied solely upon the want of proper notice of the reappraisement, and asked the court to instruct the jury as follows:

1. If the defendant attended on the day appointed for the appraisement by the merchant appraiser and, the United States not being ready to go on and the hearing postponed indefinitely, the defendant was entitled to such reasonable notice of the time and place of holding the appraisement as would enable him to attend.

2. If the United States failed to move in the matter after the adjournment from June, 1883, until March, 1884, and the defendant was then temporarily absent from home, he was entitled to a reasonable time to enable him to return and attend at the appraisement.

3. If the United States insisted on proceeding with the reappraisement in the absence of the defendant, under the circumstances, as shown by the testimony, the reappraisement is not a valid merchant's appraisement.

The judge declined to instruct as requested, and charged the jury that such notice was given to the defendant as is contemplated by the regulations of the Department and the rules of law governing reappraisements, that the reappraisement was valid, and that the plaintiff was entitled to recover a verdict for the amount of the claim, $1611.20, with interest. This was the amount claimed over and above the amount paid, and for this amount the jury returned a verdict, upon which judgment was entered accordingly. 30 Fed. Rep. 672.

The Circuit Court affirmed this judgment upon a writ of error, whereupon the defendant sued out a writ of error from this court.

*Mr. R. C. McMurtrie* for plaintiff in error.

At the former argument a member of the court inquired if the importer had given any evidence to show that the reappraisement was incorrect in amount. The reply was that none was tendered, because evidence of that character was not admissible. The authorities are distinct — the appraisement is conclusive if it is legal. Error in fact or mistakes cannot be inquired into. Act of August 30, 1842, 5 Stat. c. 270, § 17, p. 564; *Rankin* v. *Hoyt*, 4 How. 327, 335; *Bartlett* v. *Kean*, 16 How. 263; *Sampson* v. *Peaslee*, 20 How. 571, 580. In *Westray* v. *United States*, 18 Wall. 322, evidence of this character was offered and rejected because the act of the collector was conclusive, and this was affirmed. See page 329. And this was again recognized in *United States* v. *Schlesinger*, 120 U. S. 109, where the converse proposition was before the court, and where the defence was, as here, that the assessment was illegal.

The valuation is conclusive. *Hilton* v. *Merritt*, 110 U. S. 97. There is no right to go to a jury on the subject of the values. *Oelbermann* v. *Merritt*, 123 U. S. 356. But the importer can show that the appraiser had not the qualifications required by the statute. *Id.*

1. Was the importer entitled to notice? On the first trial it was ultimately admitted by the court that the importer was

entitled to notice of the reappraisement, and then it became the question in the cause whether, under the circumstances, the notice given was reasonable.

The importer had been ready and had attended at the times appointed for the hearing, but the United States was not prepared to go on nor to fix a time when they would be ready. They postponed the hearing indefinitely and for their convenience and on a promise of notice. Nine months after this, on a few days' notice, while defendant was absent temporarily from the country, they determined to go on, disregarding the application for time to permit the return of the defendant.

It is insisted by the plaintiff in error, as it was in the court below, that the real question was whether the defendant was entitled to notice ; for if this be the case the legal consequence was supposed to be that it must be a reasonable one. There is not an instance that can be produced in which notice is requisite and reasonableness of the notice is not involved.

It is important to observe that the case was an appeal from an assessment, and that the new assessors were to be governed by evidence. *Marriott* v. *Brune*, 9 How. 619, 634. The statute itself is silent on the subject of when and how this new body was to act ; but the regulations of the Treasury assume that the importer is entitled to be present, and since these regulations are in favor of the citizen, and tend to produce justice, they are entitled to great weight.

In *Rankin* v. *Hoyt*, 4 How. 327, 335, this court said : "In case the importer is dissatisfied with the valuation made by appraisers, he is allowed, . . . before paying the duty, an appeal and further hearing before another tribunal, constituted in part by persons of his own selection. These persons have been aptly denominated a species of 'legislative referees,' 2 Mason, 406; and if the importer does not choose to resort to them, he cannot, with much grace, complain afterwards that any overestimate existed." The conduct of these appraisers is inquirable into on the question of the validity of their appraisement. *Greely* v. *Burgess*, 18 How. 413, 415. In 10 How. 225, 241, *Greely* v. *Thompson*, Mr. Justice Woodbury points out

that the error lay in not adverting to the judicial character of the merchant appraiser; in fact his removal by the collector is classed with the conduct of the English Stuarts in removing judges if not sufficiently pliable.

I assume that nothing further is required to prove that the importer is entitled to notice of the reappraisement, and that the appraisers are performing a judicial function.

2. Notice of a hearing at which evidence is to be given and a fact ascertained by a tribunal, which affects the interests of the person entitled to the notice, means such notice as will enable him to protect his interests. If it does not, this absurdity is involved, that notice after the hearing is sufficient. At the first trial it was so held, but the court on consideration thought they had been mistaken in this, and that the mode and time of notice were intrusted to the caprice of the appraiser. A discretion not inquirable into is a caprice, so far as third persons are concerned.

If this ruling be correct, this is the one exceptional case in which it is so intrusted. I, at least, am not aware of another instance in which a person intrusted by law to do such a thing can assert that this discretion cannot be inquired into. The most common instance is that of a trustee, and we all know this does not mean his capricious determination. Hill on Trustees, 494, 495; *Coleman* v. *Strong*, 39 Ch. D. 443, 446; and by no one is the point better stated than by Chancellor Desaussure, *Haynesworth* v. *Cox*, Harper (Eq.) 118. The case deserves reading. An executor was given the right to elect which of two things should be given a legatee — a slave or a sum of money. Being interested in the estate, he selected a woman past child-bearing and nearly past labor. The court with some emphasis said the discretion was limited to selecting which was the more valuable for the legatee.

The authorities collected by Judge Brown, of the Southern District of New York, in a recent case, seem to render further discussion useless. *United States* v. *Doherty*, 27 Fed. Rep 730, citing 4 Inst. 41; *Rooke's Case*, 3 Rep. 100; *Rex* v. *Peters*, 1 Burrow, 568, 570; *Rose* v. *Stuyvesant*, 8 Johns. 426; *President and Trustees of Brooklyn* v. *Patchen*, 8 Wend. 47. These

citations are in accord with all the authorities. *Passmore* v. *Petit*, 4 Dall. 271; *Frey* v. *Vanlear*, 1 S. & R. 435; *United States* v. *Kirby*, 7 Wall. 486, 487; *Regina* v. *Grant*, 14 Q. B. 43; *Vestry of St. James* v. *Feary*, 24 Q. B. D. 703.

If, then, the court had the power or jurisdiction to decide that the defendant was entitled to notice of the hearing or appraisement, they had, of necessity, a power to determine whether what was given was legal notice. As they declined because their jurisdiction was not extended to that, the cause must be reversed, unless this court differs from the judge in thinking the notice was sufficient. Was this so?

3. The notice was insufficient. The cargo had been delivered, and time was quite immaterial. The Government was seeking to correct an error made by one of its officers. The defendant had attended the meeting when the United States, not being prepared, and not being able to say when they would be prepared, put off the meeting with a promise to notify; and at the end of nine months, having fixed on a day, refused to change it, though the defendant had left home to return shortly. It was not pretended that the desired delay was any disadvantage to the United States. And if they could wait, as they had done, from September, 1882, when the importation was made, to March, 1884, when the appraisement was had, there should be some reason for refusing to continue the case till May, to enable the defendant to attend.

*Mr. Assistant Attorney General Maury* for defendant in error.

MR. JUSTICE BROWN delivered the opinion of the court.

It is conceded in this case that the reappraisement was binding provided it was properly conducted; Rev. Stat. § 2930; *Rankin* v. *Hoyt*, 4 How. 327, 335; *Bartlett* v. *Kane*, 16 How. 263, 272; *Sampson* v. *Peaslee*, 20 How. 571; *Hilton* v. *Merritt*, 110 U. S. 97; and the sole defence made upon the trial was that Earnshaw did not receive a reasonable notice of the time when the reappraisement was to be made.

The facts being undisputed, the reasonableness of the notice with respect to time was a question of law for the court, and was properly withdrawn from the consideration of the jury. *Hill* v. *Hobart*, 16 Maine, 164; *Blackwell* v. *Fosters*, 1 Met. (Ky.) 88; *Seymour* v. *McCormick*, 19 How. 96, 106; *Luckhart* v. *Ogden*, 30 California, 547, 557; *Holbrook* v. *Burt*, 22 Pick. 546; *Phœnix Ins. Co.* v. *Allen*, 11 Michigan, 501. By Revised Statutes, sections 2899 to 2902, provision is made for the appraisement of imported merchandise under regulations prescribed in the succeeding sections, and by section 2930, if the importer is dissatisfied with such appraisement he may give notice to the collector, upon the receipt of which the latter "shall select one discreet and experienced merchant to be associated with one of the general appraisers wherever practicable, or two discreet and experienced merchants, citizens of the United States, familiar with the character and value of the goods in question, to examine and appraise the same, agreeably to the foregoing provisions; . . . and the appraisement thus determined shall be final and be deemed to be the true value, and the duties shall be levied thereon accordingly." No provision is expressly made by statute for notice to the importer, but by Article 466 of the Treasury Regulations of 1884, "the importer will be notified of the time and place, but not of the name of the merchant selected to assist in the appraisement." The board of appraisers thus constituted is vested with powers of a quasi-judicial character, and the appraisers are bound (§ 2902) " by all reasonable ways and means in his or their power to ascertain, estimate, and appraise the true and actual market value and wholesale price . . . of the merchandise at the time of exportation," etc. No reason is perceived for excluding this board of appraisers from the benefit of the general rule applicable to such officers, that some presumption is to be indulged in favor of the propriety and legality of their action, and that with respect to their methods of procedure they are vested with a certain discretion which will be respected by the courts, except where such discretion has been manifestly abused, and the board has proceeded in a wanton disregard of justice or of the rights of the importer.

The general principle is too well settled to admit of doubt that where the action of an inferior tribunal is discretionary its decision is final. *Giles' Case,* Strange, 881; *King* v. *Proprietors,* 2 Wm. Bl. 701; *Henderson* v. *Moore,* 5 Cranch, 11; *Marine Ins. Co. of Alexandria* v. *Young,* 5 Cranch, 187; *Marine Ins. Co. of Alexandria* v. *Hodgson,* 6 Cranch, 206.

It was decided at an early day in this court that the refusal of an inferior court to continue a case cannot be assigned as error. *Woods* v. *Young,* 4 Cranch, 237. And yet there are doubtless cases to be found which hold that where, under the recognized practice, a party makes a clear case for a continuance, it is an abuse of discretion to refuse it. Thus in *Rose* v. *Stuyvesant,* 8 Johns. 426, the judgment of a justice of the peace was reversed, because he had refused an adjournment of a case on account of a child of the defendant being dangerously sick: and in *Hooker* v. *Rogers,* 6 Cowen, 577, the verdict was set aside by the appellate court upon the ground that the circuit judge refused to put off the trial of the cause upon proof that a material witness was confined to his bed by sickness, and unable to attend court. See, also, *Trustees of Brooklyn* v. *Patchen,* 8 Wend. 47; *Ogden* v. *Payne,* 5 Cow. 15. So in *Frey* v. *Vanlear,* 1 S. & R. 435, where arbitrators adjourned to a day certain and did not meet on that day, but met on a subsequent day, examined the witnesses in the absence of the opposite party, and without notice of the meeting, and made an award, it was held that their proceedings were irregular, and the judgment was reversed. The question in all these cases is whether in respect either to the notice of the trial, adjournments, allowance of pleas, the reception of testimony, or other incidental proceedings the court has or has not acted in the exercise of a sound and reasonable discretion. The subject is fully discussed in *People* v. *Superior Court of New York,* 5 Wend. 114.

The tribunal in this case was created as a part of the machinery of the government for the collection of duties upon imports, and while its proceedings partake of a semi-judicial character, it is not reasonable to expect that in notifying the importer it should proceed with the technical accuracy neces-

sary to charge a defendant with liability in a court of law. The operations of the government in the collection of its revenue ought not to be embarrassed by requiring too strict an adherence to the forms and modes of proceeding recognized in courts of law, so long as the rights of its tax-payers are not wantonly sacrificed. In this case notice was given to the defendant by letter and telegram, but as these notices were actually received at his office, he has no right to complain that they were not served personally. *Jones* v. *Marsh,* 4 T. R. 464; *Johnston* v. *Robins,* 3 Johns. 440; *Walker* v. *Sharpe,* 103 Mass. 154; *Clark* v. *Keliher,* 107 Mass. 406; *Blish* v. *Harlow,* 15 Gray, 316; Wade on Notice, § 640.

The first day fixed for the hearing was in June, 1883, when the defendant and the appraisers attended, but the government was not ready to proceed, and the hearing was adjourned indefinitely, with an understanding that the defendant should be notified of the day when the case would be again taken up. Nine months elapsed without any action, when on March 18, 1884, the general appraiser at New York addressed a letter to the defendant at Philadelphia, notifying him that the reappraisement would take place at his office on the 20th day of March, at noon. Defendant at that time was in Cuba, but the letter was received by his brother, a clerk in his office, who wrote the appraiser in Earnshaw's name that Mr. Earnshaw was out of the country and was not expected back before the beginning of May, "and I must, therefore, ask you to be kind enough to postpone the said reappraisement." In reply to this a telegram was sent to the effect that the case was adjourned to March 25th, at noon, a postponement of five days from the time originally fixed. To this telegram no attention was paid, and it appears that the reappraisement was not held until the 31st, nearly a week after the day fixed in the telegram. On the 10th of May, when the defendant returned, he received a demand for payment of the duties according to the reappraisement.

The amount of business done by the defendant does not distinctly appear, but considering that this suit is brought to collect the difference in duties upon eleven different importations

of iron ore from a single foreign port during the latter half of 1882, it is but fair to infer that it was of considerable magnitude. Defendant knew before leaving for Cuba that proceedings were pending for a reappraisement of duties upon these cargoes, and were liable to be called up in his absence. Under such circumstances the appraiser might reasonably expect that he would leave some one to represent him, or at least that his clerk would act upon his notification to appear on the 25th, and ask for a further postponement on the ground of the defendant's continued absence, if the personal presence of the latter were in fact important. Had he done so and his application been refused, a much stronger case would have been presented by the defendant. He did not do so, however, but neglected to appear or to request a further postponement, and practically allowed the hearing to take place by default. In view of the neglect of the defendant to make any provision for the case being taken up in his absence, and of his clerk to appear and ask for a further postponement of the hearing, we cannot say that the appraisers acted unreasonably in proceeding *ex parte* and imposing the additional duties without awaiting the return of the defendant. Indeed, if a court of justice should fix a day for the trial of a case, though the court were informed that a party could not be present on that day, and the attorney of the party refused to appear and demand a further postponement, we should be unwilling to say that it would constitute such an abuse of discretion as to vitiate the judgment.

There was no error in the ruling of the court below, and the judgment is, therefore,

*Affirmed.*